| | |
|---|---|
| **FITAPELLI & SCHAFFER LLP**<br>Joseph A. Fitapelli<br>Dana Cimera<br>28 Liberty St., 30th Floor<br>New York, New York 10005<br>Telephone: (212) 300-0375 | **JOSEPHSON DUNLAP LLP**<br>Michael A. Josephson*<br>Andrew W. Dunlap*<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Telephone: (713) 352-1100 |
| **BRUCKNER BURCH PLLC**<br>Richard J. (Rex) Burch*<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Telephone: (713) 877-8788 | **ANDERSON ALEXANDER PLLC**<br>William C. (Clif) Alexander*<br>Austin W. Anderson*<br>101 N. Shoreline Blvd., Suite 610<br>Corpus Christi, Texas 78401<br>Telephone: (361) 452-1279 |

**Pro Hac Vice applications forthcoming*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| ROBERT SCHUMAN, Individually and for Others Similarly Situated<br><br>v.<br><br>FRESENIUS MEDICAL CARE HOLDINGS, INC. | Case No. __23. Civ. 5731__<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1. Robert Schuman (Schuman) brings this class action to recover unpaid wages and other damages from Fresenius Medical Care Holdings, Inc. (Fresenius).

2. Fresenius employed Schuman as a Registered Nurse (RN) in Centereach, Suffolk County, New York.

3. Like the Putative Class Members (as defined below), Schuman regularly worked more than 40 hours in a week.

4. But Fresenius did not pay them for all the hours they worked.

1

5. Instead, Fresenius automatically deducted 30 minutes a day from these employees' work time for so-called "meal breaks."

6. Schuman and the Putative Class Members were thus not paid for that time.

7. But Fresenius failed to provide Schuman and the Putative Class Members with *bona fide* meal breaks.

8. And Schuman and the Putative Class Members did not actually receive *bona fide* meal breaks.

9. Instead, Fresenius required Schuman and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts and Fresenius subjected them to work interruptions during their unpaid "meal breaks."

10. Fresenius' auto-deduction policy violates the New York Labor Law (NYLL) and its implementing regulations (NYCRR) by depriving Schuman and the Putative Class Members of overtime wages for all overtime hours worked.

11. In addition to excluding time Schuman and the Putative Class Members worked during their unpaid "meal breaks," Fresenius also paid Schuman and the Putative Class Members different hourly rates depending on what types of shifts they worked (or "shift differentials").

12. But Fresenius failed to include these shift differentials in calculating Schuman's and the Putative Class Members' regular rates of pay for overtime purposes.

13. Fresenius' shift differential pay scheme violates the NYLL by depriving Schuman and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received.

## JURISDICTION & VENUE

14. This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

15. Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Schuman's Putative Class and Fresenius are citizens of different states; and (c) Schuman's Putative Class exceeds 100 members.

16. This Court has general personal jurisdiction over Fresenius because it is a domestic corporation.

17. Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

18. Specifically, Fresenius employed Schuman in Suffolk County, New York, which is in this District and Division.

**PARTIES**

19. Fresenius employed Schuman as an RN at Fresenius' dialysis clinic in Centereach, New York from approximately October 2019 until October 2022.

20. Throughout his employment, Fresenius classified Schuman as non-exempt and paid him on an hourly basis.

21. Throughout his employment, Fresenius subjected Schuman to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

22. But Fresenius failed to provide Schuman with *bona fide* meal breaks, and Schuman did not actually receive *bona fide* meal breaks.

23. Further, throughout his employment, Fresenius paid Schuman shift differentials that Fresenius failed to include in calculating his regular rate of pay for overtime purposes.

24. Pursuant to FED. R. CIV. P. 23, Schuman brings this class action on behalf of himself and other similarly situated hourly, non-exempt patient care employees who worked for, or on behalf of, Fresenius in New York who (1) were subject to Fresenius' automatic meal break deduction policy, and/or (2) were paid under Fresenius' shift differential pay scheme.

25. Fresenius automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

26. But Fresenius fails to provide, and these employees do not actually receive, *bona fide* meal breaks.

27. Instead, Fresenius requires these employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

28. Thus, Fresenius uniformly deprives these employees of overtime for all overtime hours worked in violation of the NYLL.

29. Further, Fresenius pays these employees shift differentials that it fails to include in calculating their regular rates of pay for overtime purposes.

30. Thus, Fresenius uniformly deprive these employees of overtime wages at the proper premium rate (based on all renumeration received) in violation of the NYLL.

31. The Putative Class of similarly situated employees is defined as:

> **All hourly, non-exempt employees who worked for, or on behalf of, Fresenius in New York who received (1) a meal period deduction and/or (2) shift differentials at any time during the past 6 years and 228 days[1] from the filing of this Complaint ("Putative Class Members").**

32. Fresenius is a New York corporation that maintains its headquarters in Waltham, Massachusetts.

33. Fresenius may be served with process by serving its registered agent: **CT Corporation System, 28 Liberty Street, New York, New York 10005**.

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

## FACTS

34. Fresenius bills itself as "the world's leading provider of products and services for individuals with renal diseases."[2]

35. "Through [its] network of more than 4,100 dialysis clinics, [Fresenius] provide[s] dialysis treatments to approximately 345,000 patients worldwide[,]"[3] including in New York.

36. To complete its business objectives, Fresenius hires patient care workers (including Schuman and the Putative Class Members) to work in the dialysis clinics that Fresenius owns and/or operates in the State of New York.

37. Fresenius uniformly classifies the patient care employees who work in its New York dialysis clinics, including Schuman and the Putative Class Members, as non-exempt and pays them on an hourly basis.

38. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39. For example, Fresenius employed Schuman as an RN at Fresenius' clinic in Centereach, New York from approximately October 2019 until October 2022.

40. Fresenius classified Schuman as non-exempt and paid him on an hourly basis.

41. Fresenius subjected Schuman to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

42. But Fresenius failed to provide Schuman with *bona fide* meal breaks, and Schuman did not actually receive *bona fide* meal breaks.

43. Further, Fresenius paid Schuman shift differentials depending on what types of shifts he worked.

---

[2] https://www.freseniusmedicalcare.com/en/about-us/company-profile (last visited July 11, 2023).
[3] *Id.*

5

44. But Fresenius failed to include these shift differentials in calculating Schuman's regular rate of pay for overtime purposes.

45. As an RN, Schuman's primary responsibilities included providing direct patient care to dialysis patients, prepping patients for dialysis, overseeing dialysis treatments, checking vitals, charting patients' treatments, responding to any emergencies, and generally assisting doctors and other patient care staff with dialysis and other healthcare treatments.

46. Schuman and the Putative Class Members perform their jobs under Fresenius' supervision and use materials, equipment, and technology approved and supplied by Fresenius.

47. Fresenius requires Schuman and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

48. At the end of each pay period, Schuman and the Putative Class Members receive wages from Fresenius that are determined by common systems and methods that Fresenius selects and controls.

49. Fresenius requires its hourly, non-exempt patient care employees, including Schuman and the Putative Class Members, to record their hours worked using Fresenius' timeclock system.

50. Further, Fresenius subjects these patient care employees to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

51. Specifically, Fresenius automatically deduct 30 minutes a day from Schuman's and the Putative Class Members' recorded work time and wages for "meal breaks."

52. Fresenius automatically deducts this time regardless of whether Schuman and the Putative Class Members actually receive full, uninterrupted, 30-minute meal periods.

53. Fresenius simply assumes Schuman and the Putative Class Members receive *bona fide* meal breaks each shift they work.

54. But Fresenius fails to provide Schuman and the Putative Class Members with *bona fide* meal periods.

55. And Schuman and the Putative Class Members do not actually receive *bona fide* meal breaks.

56. Instead, Fresenius requires Schuman and the Putative Class Members to remain on-duty and perform compensable work for Fresenius' predominant benefit throughout their shifts.

57. And Fresenius continuously subjects Schuman and the Putative Class Members to work interruptions during their unpaid meal periods.

58. Because of these constant work interruptions, Schuman and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

59. Rather, during their unpaid "meal breaks," Schuman and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

60. Thus, Schuman and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for Fresenius'—not these employees'—predominant benefit.

61. This unpaid time is compensable under the NYLL because Fresenius knew, or should have known, that (1) Schuman and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) they remained on Fresenius' premises, and/or (8) they

spent their unpaid meal periods substantially performing their regular patient care duties for Fresenius' predominant benefit.

62. Fresenius fails to exercise its duty as Schuman's and the Putative Class Members' employer to ensure these employees are not performing work that Fresenius does not want performed during their unpaid "meal breaks."

63. And Fresenius knows Schuman and the Putative Class Members routinely work "off the clock" during their unpaid meal breaks because Fresenius expects and requires these employees to do so.

64. In fact, Schuman and the Putative Class Members repeatedly complained to Fresenius' management and their supervisors about being forced to work during their unpaid "meal breaks."

65. Despite accepting the benefits, Fresenius does not pay Schuman and the Putative Class Members for the compensable work they perform during their "meal breaks."

66. Thus, under Fresenius' uniform automatic meal break deduction policy, Schuman and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work over 40 hours in violation of the NYLL.

67. Further, in addition to excluding time from these employees' wages for "meal breaks," Fresenius also pays Schuman and the Putative Class Members shift differentials depending on what kind of shifts they work.

68. But Fresenius fails to include these shift differentials in calculating Schuman's and the Putative Class Members' regular rates of pay for overtime purposes.

69. Fresenius' shift differential pay scheme violates the NYLL by depriving Schuman and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay—based on *all* renumeration received.

70. Schuman worked more than 40 hours in at least one workweek during the 6 years before this Complaint was filed.

71. Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the 6 years before this Complaint was filed.

72. Indeed, every other workweek, Schuman and the Putative Class Members worked 16-hour shifts for at least 4 days a week (or 64+ hours).

73. And Schuman and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their job duties and patient care responsibilities for Fresenius' predominate benefit.

74. As a result, Schuman and the Putative Class Members routinely work over 40 hours in a typical workweek.

75. When Schuman and the Putative Class Members work more than 40 hours in a workweek, Fresenius does not pay them overtime at rates not less than 1.5 times their regular rates of pay for all overtime hours worked because Fresenius failed to include: (1) time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek and/or (2) these employees' shift differentials in calculating their regular rates of pay for overtime purposes in violation of the NYLL.

### CLASS ACTION ALLEGATIONS

76. Schuman incorporates all other paragraphs by reference.

77. Schuman brings his NYLL claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

78. The Putative Class Members are uniformly victimized by Fresenius' auto-deduction policy and/or shift differential pay scheme, which are in willful violation of the NYLL.

79. Other Putative Class Members worked with Schuman and indicated they were paid in the same manner, performed similar work, and were subject to Fresenius' same meal break deduction policy and/or shift differential pay scheme.

80. Based on his experience with Fresenius, Schuman is aware Fresenius' illegal practices were imposed on the Putative Class Members.

81. The Putative Class Members are similarly situated in all relevant respects.

82. Even if their specific job titles or precise locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

83. Therefore, the specific job titles or precise job locations of the various members of the Putative Class do not prevent class treatment.

84. Rather, the Putative Class is held together by Fresenius' uniform (1) automatic meal break deduction policy and/or (2) shift differential pay scheme that systematically deprived Schuman and the Putative Class Members of proper overtime wages for all overtime hours worked.

85. Fresenius' failure to pay overtime wages as required by the NYLL results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

86. Fresenius' records reflect the number of hours worked each week by the Putative Class Members.

87. Fresenius' records show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

88. Fresenius' records also show that it paid the Putative Class Members shift differentials.

89. The back wages owed to Schuman and the Putative Class Members can be calculated using the same formula applied to the same records.

90. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Fresenius' records, and there is no detraction from the common nucleus of liability facts.

91. Therefore, the issue of damages does not preclude class treatment.

92. Schuman's experiences are therefore typical of the experiences of the Putative Class Members.

93. Schuman has no interest contrary to, or in conflict with, the Putative Class Members.

94. Like each Putative Class Member, Schuman has an interest in obtaining the unpaid wages owed under New York law.

95. A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent this class action, many Putative Class Members will not obtain redress for their injuries, and Fresenius will reap the unjust benefits of violating New York wage laws.

97. Further, even if some of the Putative Class Members could afford individual litigation against Fresenius, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

99. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

    a. Whether Fresenius engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of New York wage laws;

  b. Whether Fresenius' automatic meal break deduction policy deprived Schuman and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of New York wage laws;

  c. Whether Fresenius knew, or had reason to know, Schuman and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of New York wage laws;

  d. Whether Fresenius failed to pay Schuman and the Putative Class Members overtime wages for all hours worked over 40 in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the NYLL;

  e. Whether Fresenius failed to include Schuman's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes in violation of the NYLL;

  f. Whether Fresenius' violations of New York wage laws resulted from a continuing course of conduct;

  g. Whether Fresenius' decision not to pay Schuman and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was made in good faith;

  h. Whether Fresenius' failure to pay Schuman and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was the result of a *bona fide* dispute; and

  i. Whether Fresenius' violations of New York wage laws were willful.

101. Schuman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

102. As part of its regular business practices, Fresenius intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating New York wage laws with respect to Schuman and the Putative Class Members.

103. Fresenius' illegal meal break deduction policy deprived Schuman and the Putative Class Members of overtime wages for all overtime hours worked, which they are owed under the NYLL.

104. Fresenius' illegal shift differential pay scheme deprived Schuman and the Putative Class Members of overtime wages at the proper premium rate (based on all renumeration received), which they are owed under the NYLL.

105. As a result of its illegal employment policies, Fresenius is liable under the NYLL for failing to pay Schuman and the Putative Class Members overtime wages at the proper premium rate for all overtime hours worked.

### FRESENIUS' VIOLATIONS OF THE NYLL WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE NYLL

106. Schuman incorporates all other paragraphs by reference.

107. Fresenius knew it was subject to the NYLL's overtime provisions.

108. Fresenius knew the NYLL required it to pay employees, including Schuman and the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all renumeration received—for all hours worked after 40 in a workweek.

109. Fresenius knew it employed Schuman and the Putative Class Members.

110. Fresenius knew Schuman and the Putative Class Members were non-exempt employees entitled to overtime.

111. Fresenius knew Schuman and the Putative Class Members were paid on an hourly basis.

112. Fresenius knew Schuman and the Putative Class Members worked more than 40 hours in at least one workweek during the relevant statutory period because Fresenius required these employees to record their hours worked using Fresenius' timeclock system.

113. Fresenius knew it paid Schuman and the Putative Class Members shift differentials.

114. Fresenius knew the NYLL required it to include Schuman's and the Putative Class Members' shift differentials in calculating their regular rates of pay for overtime purposes.

115. Nonetheless, Fresenius failed to include Schuman's and the Putative Class Members' shift differentials in calculating these employees' regular rates of pay for overtime purposes.

116. Thus, Fresenius knew, should have known, or showed reckless disregard for the fact it failed to pay Schuman and the Putative Class Members overtime wages at the proper premium rate—based on all renumeration received—in violation of the NYLL.

117. Fresenius' failure to pay Schuman and the Putative Class Members overtime wages at the proper premium rate was neither reasonable, nor was the decision not to pay these employees overtime wages at the proper premium rate made in good faith.

118. Fresenius knew the NYLL required it to pay hourly, non-exempt employees, including Schuman and the Putative Class Members, for all hours these employees performed compensable work.

119. Fresenius knew that, as Schuman's and the Putative Class Members' employer, it had a duty to ensure these employees were not performing work that Fresenius did not want performed during their unpaid "meal breaks."

120. Fresenius knew it failed to provide Schuman and the Putative Class Members with *bona fide* meal breaks.

121. Fresenius knew Schuman and the Putative Class Members did not actually receive *bona fide* meal breaks.

122. Fresenius knew Schuman and the Putative Class Members regularly worked during their unpaid meal breaks because Fresenius expected and required them to do so.

123. Fresenius knew Schuman and the Putative Class Members regularly spent their meal breaks substantially performing their normal patient care job duties for Fresenius' predominant benefit.

124. Indeed, Schuman and the Putative Class Members repeatedly complained to Fresenius' management, HR, and their supervisors about being forced to work during their unpaid "meal breaks."

125. Thus, Fresenius knew Schuman and the Putative Class Members performed compensable work during their unpaid meal breaks.

126. Nonetheless, Fresenius automatically deducted 30 minutes a day from Schuman's and the Putative Class Members' recorded work time for "meal breaks," regardless of whether they actually received *bona fide* meal breaks.

127. Thus, Fresenius knew, should have known, or showed reckless disregard for the fact that it did not pay Schuman and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid meal breaks.

128. In other words, Fresenius knew, should have known, or showed reckless disregard for the fact that it failed to pay Schuman and the Putative Class Members overtime wages for all overtime hours worked, including hours worked during their unpaid meal breaks, in violation of the NYLL.

129. Fresenius' failure to pay Schuman and the Putative Class Members overtime compensation for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation for all overtime hours worked made in good faith.

130. Fresenius failure to pay Schuman and the Putative Class Members overtime compensation for all overtime hours worked was not the result of a *bona fide* dispute.

131. Fresenius knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Schuman and the Putative Class Members of overtime wages at the proper premium rate for all overtime hours worked in violation of the NYLL.

132. Indeed, Fresenius and its affiliated entities have been sued previously by employees for failing to pay wages, including for time spent working during automatically deducted meal breaks, in violation of federal and state wage and hour laws. *See*, *e.g.*, *Laughlin v. Fresenius Medical Care Holdings, Inc., et al.*, No. 2:23-CV-00180 (E.D. Wash.); *Mooney, et al. v. Fresenius Medical Care Holdings, Inc.*, No. 1:22-CV-12037 (D. Mass.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL

133. Schuman incorporates all other paragraphs by reference.

134. Schuman brings his NYLL claim on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

135. The conduct alleged violates the NYLL and its implementing regulations, N.Y. LAB. LAW §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

136. At all relevant times, Fresenius was an "employer" subject to the requirements, and within the meaning, of the NYLL and its implementing regulations. *See* N.Y. LAB. LAW §§ 190(3) and 651(6).

137. At all relevant times, Fresenius employed Schuman and the Putative Class Members as covered "employees" within the meaning of the NYLL. *See* N.Y. LAB. LAW §§ 190(2) and 651(5).

138. The NYLL requires employers, like Fresenius, to pay employees, including Schuman and the Putative Class Members, overtime compensation at rates not less than 1.5 their regular rates of pay for all hours worked after 40 in a workweek. *See* N.Y. LAB. LAW §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

139. Schuman and the Putative Class Members are entitled to overtime pay under the NYLL.

140. Fresenius violated, and is violating, the NYLL by failing to pay Schuman and the Putative Members overtime wages at rates not less than 1.5 times their regular rates for all hours worked after 40 in a workweek, including hours worked during these employees' unpaid meal periods. *See* N.Y. LAB. LAW §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

141. Fresenius' unlawful conduct harmed Schuman and the Putative Class Members by depriving them of the overtime wages they are owed.

142. Fresenius's NYLL violations with respect to Schuman and the Putative Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* N.Y. LAB. LAW § 198.

143. Accordingly, Schuman and the Putative Class Members are entitled to recover their unpaid overtime compensation under the NYLL in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as interest, penalties, and attorney's fees and costs. *See* N.Y. LAB. LAW §§ 198(4) and 663(1)

## JURY DEMAND

144. Schuman demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Schuman, individually and on behalf of the Putative Class Members, seeks the following relief:

    a.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

    b.    An Order appointing Schuman and his counsel to represent the interests of the Putative Class;

    c.    An Order finding Fresenius liable to Schuman and the Putative Class Members for unpaid overtime wages owed under the NYLL, plus liquidated damages in an amount equal to their unpaid wages, and penalties;

    d.    Judgment awarding Schuman and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the NYLL;

    e.    An Order awarding attorney's fees, costs, and expenses;

    f.    Pre- and post-judgment interest at the highest applicable rates; and

    g.    Such other and further relief as may be necessary and appropriate.

Dated: July 28, 2023

Respectfully submitted,

**FITAPELLI & SCHAFFER LLP**

By: /s/ *Joseph A. Fitapelli*
    Joseph A. Fitapelli
    Dana M. Cimera
28 Liberty Street, 30th Floor
New York, New York 10005
Tel: (212) 300-0375

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Tel: (361) 452-1279
Fax: (361) 452-1284
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF & THE PUTATIVE CLASS MEMBER**